UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
MARGARET STUDLEY,                              )
                                               )
                    Plaintiff,       )   No. C15-1150RSL
                                               )
       v.                                       )   ORDER GRANTING DEFENDANT'S
                                               )   MOTION FOR SUMMARY
THE BOEING COMPANY,                            )   JUDGMENT
                                               )
                  Defendant.       )
_____)

      This matter comes before the Court on "Defendant The Boeing Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Adjudication." Dkt. # 16. Plaintiff alleges that defendant failed to accommodate her disability, discriminated against her, and retaliated against her in violation of the Washington Law Against Discrimination ("WLAD"). Boeing seeks dismissal of all of plaintiff's claims.

      Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

1  designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S.
2  at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . .
3  and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723
4  F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues
5  regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence
6  of a scintilla of evidence in support of the non-moving party's position will be insufficient" to
7  avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014);
8  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be
9  granted where the nonmoving party fails to offer evidence from which a reasonable jury could
10 return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th
11 Cir. 2010).

12 Having reviewed the memoranda, declarations, and exhibits submitted by the parties,
13 having heard the arguments of counsel, and taking the evidence in the light most favorable to
14 plaintiff, the Court finds as follows:

## BACKGROUND

16 Plaintiff began working at Boeing as an assembler in May 2007. In January 2012,
17 plaintiff injured her back while on the job. She was out of work for several days and made a
18 worker's compensation claim. On May 3, 2012, plaintiff's doctor released her to "return to her
19 full work duties as of today without restriction." Dkt. # 17-1 at 74. Plaintiff was again out of
20 work from October 15, 2012, to November 6, 2012, on an approved medical leave of absence
21 due to her depression. Dkt. # 23 at ¶ 3.

22 In January 2013, plaintiff received a Corrective Action Memo ("CAM") notifying her that
23 she had twenty-three absences between March 2012 and January 2013, ten of which had
24 associated medical documentation and thirteen of which were marked unexcused. Dkt. # 22 at
25 41. All but one of the unexcused absences occurred in December 2012 and January 2013.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -2-

Plaintiff challenged the accuracy of four of the January absences. Dkt. # 22 at 42.[1]

In February 2013, plaintiff reported a flare up of pain in her right shoulder and was given pain medications and new work restrictions. Dkt. # 24 at 5. Boeing accommodated her with a light duty assignment. Plaintiff's restrictions were relaxed over time: in the beginning of March 2013, plaintiff was precluded from working overhead for more than three hours and lifting more than 30-40 pounds. Id. Although plaintiff apparently believed that she could return to her regular position with these restrictions in place, her Disability Management Representative ("DMR") notified her that "[t]he restrictions you currently have on file at Boeing Medical would definitely keep you from doing the full scope of your normal job, which is why you were placed in an out of shop light duty." Dkt. # 23 at 8-9. The DMR declined to speak with plaintiff's doctor directly, instead suggesting that the doctor speak with Boeing Medical about the appropriate level of restrictions. Id. at 7-8. The next day, plaintiff's doctor cleared her to "work to the limits of her job tasks as described in her Job Analysis." Dkt. # 24 at 7.[2] Plaintiff returned to her regular position.

On April 18, 2013, plaintiff received another CAM based on a failure to maintain her attendance at an acceptable level. Dkt. # 22 at 48. While there is evidence that plaintiff had a doctor's appointment on at least two of the five days on which she was marked absent, there is no indication that plaintiff provided Boeing with medical documentation linking those absences

---

[1] Boeing chose not to discuss this CAM, the April 2013 attendance-related CAM, or plaintiff's late 2012 mental health leave in its opening memorandum. The April 2013 CAM was specifically considered when Boeing issued the multiple active corrective action ("MACA") CAM in July 2013, and yet it is ignored when Boeing explains what led to the issuance of the MACA CAM. Dkt. # 16 at 11. The Court appreciates the fact that these intervening CAMs and protected activity make it more difficult to argue that plaintiff's termination was temporally remote from her period of disability. Nevertheless, these facts are relevant and should have been disclosed.

[2] The doctor released plaintiff to work without restrictions based on plaintiff's representation that overhead reaching and lifting more than 30-40 pounds were not part of her job description. Dkt. # 24 at ¶¶ 9 and 11.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -3-

to her disability or otherwise followed the proper procedures to have those absences excused.

In May 2013, plaintiff was working on a team led by Kayla Anttila. Dkt. # 23 at ¶ 15. Plaintiff was assigned to work on a Norwegian Air airplane in Stall 120 performing a task called "rain in the plane." That particular task required overhead work, and plaintiff opted to go to a different stall where the other half of Anttila's team was working. Dkt. # 22 at 154 and 152. Plaintiff asked the lead in that stall for an assignment, which she did for about two minutes until Anttila found her. Plaintiff told Anttila that "rain in the plane" aggravated her back, but Anttila sent her back to work in Stall 120. Dkt. # 22 at 15, 19-20. Boeing conducted an investigation of the matter. Plaintiff denied being out of her assigned work area, but other employees confirmed seeing her in the flight line and otherwise outside of Stall 120. A CAM was issued on July 9, 2013, for being "out of your work area without notifying Management during your regular scheduled work hours for an excessive amount of time." Dkt. # 17-1 at 80.

In June 2013, plaintiff received a CAM for failing to accurately report her hours worked. Dkt. # 17-1 at 78. Plaintiff acknowledges that Boeing's time records were inaccurate in that there is no indication that she clocked out on certain days, but contends that the gun used to scan employee ID badges was defective. Boeing investigated this claim, found the gun was functioning properly, and issued a CAM. Dkt. # 17-1 at 27-29.

Plaintiff applied to take intermittent leave under the Family Medical Leave Act. Boeing granted that request in July 2013. Dkt. # 23 at ¶ 19.

At some point during the summer of 2013, plaintiff and other employees were watching the delivery of an airplane from the top of an aerostand. A safety focal walking by asked plaintiff to get down: one side of the aerostand had no fall protection (when in use, it is pushed up against the airplane). Plaintiff came down, but then climbed halfway back up the stand. The safety focal again asked her to come down and requested her badge number. Plaintiff did not hear him and walked away. He found her in another stall, where he obtained her badge number and reported

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -4-

the incident. Dkt. # 17-1 at 44-48. Plaintiff received a CAM on July 24, 2013, for failure "to follow "Fall Protection Safety guidelines." Dkt. # 17-1 at 82. The safety focal was unaware that plaintiff had taken medical leave or made a worker's compensation claim.

Plaintiff now had multiple active CAMs on file. On July 24, 2013, Boeing issued a MACA CAM, suspended plaintiff for one day, and notified her that "[a]ny subsequent violation of any of the company's expectations will result in a review for discharge." Dkt. # 17-1 at 84.

Plaintiff missed seven days of work between July 24, 2013, and September 17, 2013. Plaintiff did not contact DMR to let them know that any of these absences were related to her occupational injury, as is required by Boeing policy. On October 3, 2013, plaintiff's human resources generalist contacted DMR in an attempt to confirm that plaintiff knew that she was supposed to notify DMR of workplace injury-related absences. Dkt. # 22 at 52. HR was contemplating further corrective action and, given the outstanding MACA CAM, acknowledged that "this particular situation may lead to potential termination . . . ." Id. On that same date, plaintiff requested a medical leave of absence until January 13, 2014, to deal with her depression. That leave was granted. In response to HR's inquiry, DMR provided a list of dates from February 2011 to May 2013 on which plaintiff had called the DMR hotline. Dkt. # 22 at 51. HR determined that at least one of the absences in the summer of 2013 was unexcused because plaintiff did not appropriately report the absence to DMR. Dkt. # 18 at ¶ 11. A final CAM was issued on the day plaintiff returned from leave, and her employment with Boeing was terminated.

## DISCUSSION

**A. Failure to Accommodate**

The WLAD makes it unlawful for an employer to discharge a person from employment because of her sensory, mental, or physical disability. RCW 49.60.180. One way in which an employer violates this mandate is if it fails to take steps that are "reasonably necessary to

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT     -5-

accommodate an employee's condition" so as to allow the employee to continue working. Riehl v. Foodmaker, Inc., 152 Wash.2d 138, 145 (2004) (quoting Doe v. Boeing Co., 121 Wash.2d 8, 17 (1993)). "An employee qualifies for reasonable accommodation if he or she has an impairment that substantially limits his or her ability to perform the job, or the employer has notice of the impairment and medical documentation establishes 'a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect.'" Johnson v. Chevron U.S.A., Inc., 159 Wn. App. 18, 28 (2010) (quoting RCW 49.60.040(7)(d)). Based on the evidence in the record, plaintiff cannot show that she was deprived of an accommodation to which she was entitled.

When plaintiff's physical or mental impairments interfered with her ability to work, Boeing granted leave and/or provided a light duty assignment to accommodate her. Plaintiff argues that Boeing failed to provide reasonable accommodations when it returned her to her regular position in March 2013 and when Anttila refused to reassign her in May 2013. Each incident is discussed below.

As of March 7, 2013, plaintiff was released to work without restriction to perform any and all of the tasks that fell within her job description. Plaintiff maintains that, in returning her to her regular position, Boeing violated its duty to engage an the interactive process designed to find a workable accommodation for plaintiff's impairments. This argument is wholly unsupported, if not contradicted, by the record evidence. As plaintiff's light duty assignment was set to expire, plaintiff and her DMR communicated via email regarding her limitations and preferences. Although plaintiff wanted to return to her regular position, the DMR told her that the restrictions she had on file would preclude her from performing that job according to her Job Analysis and discussions with her manager. Dkt. # 23 at 7. If plaintiff were still limited as stated in the file, Boeing would accommodate her by providing a light duty assignment. Plaintiff promptly produced a doctor's note releasing her to full duty employment with no restrictions.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -6-

The parties interacted, the medical record showed that no accommodations were necessary, and plaintiff obtained the result she desired: return to her regular job duties.

Thus, as of March 2013, the medical documentation regarding plaintiff's back injury showed that she was unimpaired and that there were no substantial limits on her ability to perform her job. Plaintiff's May 2013 complaint to Anttila that performing "rain in the plane" tasks aggravated her back did not trigger the duty to accommodate under RCW 49.60.040(7)(d). Even if one were to assume that a complaint of a risk of injury put the employer on notice of a qualifying impairment, thereby satisfying the first part of RCW 49.60.040(7)(d)(ii), the medical documentation cleared plaintiff to perform her normal job tasks. Plaintiff knew since at least March 2013 that overhead work was part of her job. As far as Boeing was concerned, there was no medical documentation establishing a reasonable likelihood that performing normal job functions without an accommodation would aggravate a pre-existing impairment or create a substantial limiting effect. Under Washington law as applied to the facts of this case, plaintiff was not entitled to an accommodation.[3]

At oral argument, counsel argued that plaintiff suffers from depression and/or anxiety and that Boeing failed to engage in an interactive process to determine whether her various violations of Boeing policy were attributable to those conditions. Absent some indication that accommodation is necessary, however, the duty to engage in the interactive process does not arise. Whenever plaintiff requested a leave of absence to deal with her mental health issues, the requests were granted. As far as the record shows, plaintiff returned from those leaves with no restrictions and made no requests for accommodation other than additional leave. Boeing was

---

[3] To the extent plaintiff argues that Boeing provided an accommodation in May 2013 and then revoked it, the argument is creative but not factually supported. Plaintiff failed to appear for (or abandoned) her work assignment in Stall 120. There is no indication that anyone knew that she had a medical objection to the "rain in the plane" task at the time she found Brian Lind and asked for a different assignment. The fact that a task was found for her in no way suggests that she was granted an accommodation for a medical need or physical limitation that was undisclosed.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -7-

unaware that plaintiff's anxiety or depression substantially limited her ability to perform her job duties and had no medical documentation suggesting that engaging in her job functions without an accommodation would aggravate her depression or anxiety. Having failed to show either a need or request for on-going mental health accommodation, this aspect of plaintiff's claim fails.

**B. Disparate Treatment**

An employer can violate the WLAD by discharging a person from employment because of a disability. RCW 49.60.180(2). To survive a motion for summary judgment, plaintiff "only needs to show that a reasonable jury could find that the plaintiff's protected trait was a substantial factor motivating the employer's adverse action." Scrivener v. Clark College, 181 Wn.2d 439, 445 (2104). Plaintiff may raise the necessary inference that her disability motivated her termination "by either offering direct evidence of an employer's discriminatory intent, or by satisfying the McDonnell Douglas [Corp. v. Green, 411 U.S. 792, 802 (1973)], burden-shifting test . . . ." Alonso v. Qwest Commc'ns Co., LLC, 178 Wn. App. 734, 743-44 (2013). Plaintiff has opted to proceed through direct evidence in this case. Dkt. # 21 at 19. She must, therefore, provide evidence which, if believed, could allow a reasonable jury to find that her disability was a substantial or significant motivating factor in the decision to terminate her employment without the need to draw inferences or make presumptions. Kastanis v. Educ. Employees Credit U., 122 Wn.2d 483, 491 (1993); Kiser v. Clark College, 143 Wn. App. 1044 (2008).

Plaintiff's theory of the case is that Boeing discharged her because of her absences and that her absences were caused by her back injury and/or depression. Plaintiff relies on Alexander v. Boeing Co., 2014 WL 3734291 (W.D. Wash. July 28, 2014), for the proposition that conduct resulting from a disability, such as absences for medical appointments, treatment, and recovery, is part of the disability and does not provide a separate and distinct basis for an adverse employment action. Id. at *11 (quoting Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 152 (2004)). In Alexander, plaintiff suffered from migraines, and her supervisor and human resources were

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -8-

aware that most of her absences were related to this condition. A prior accommodation had allowed her to work from home and to work part days when a migraine struck, but when the accommodation was removed, her absences increased. The absences were considered a negative factor in her performance review, resulted in a CAM and five-day suspension for unexcused absences, and ultimately led to her termination for job abandonment despite a pending request for FMLA-protected leave. The court found that Boeing may have violated its duty to accommodate plaintiff's disability: in that context, a reasonable jury could find that Boeing's consideration of disability-related absences constituted disability discrimination.

In this case, the evidence shows that Boeing repeatedly granted medical leave and other reasonable accommodations for plaintiff's workplace injury and depression whenever they were requested. Any absences that plaintiff took the trouble to tie to her mental or physical disabilities were excused, and there is no indication that any of them resulted in an adverse employment action. Other absences, however, were unexcused, either because plaintiff provided no reason for the absence or because she failed to follow company policy to tie the absence to her disabilities. Boeing need not presume that every absence "results from the disability." An employee may be absent because she has the flu, because she has a doctor's appointment unrelated to her disability, or because she wants a mental health day – if such absences are not excused under the governing leave programs, they can properly be considered by the employer when making employment decisions. It is only when the employee provides the notifications and documentation required by the employer to establish the link between her disability and a particular absence that the absence must not be considered as a negative factor.

Plaintiff did not follow Boeing's policies and procedures for excusing the thirty absences that triggered corrective action,[4] and she has not provided any evidence that the company's

---

[4] Plaintiff did challenge the accuracy of four of the absences listed on the January 2013 CAM, but made only the barest effort to provide documentation linking those absences to her disability weeks

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -9-

procedures were too byzantine or difficult for her to follow – in fact, she had successfully utilized the notification systems on numerous occasions.[5] Plaintiff was disciplined for unexcused absences (*i.e.*, absences for which she had failed to establish a link to her workplace injury or disability), being out of her work area, failing to report her hours accurately, violating safety instructions, and having multiple active CAMs. No reasonable jury could find, based on the evidence in the record, that any of these actions were caused by, related to, or resulted from plaintiff's disability. Plaintiff has failed to raise a genuine issue of fact regarding defendant's motivation.[6]

**C. Retaliation**

Plaintiff also asserts that her termination was retaliatory. The WLAD makes it an unfair practice "for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden in this chapter . . . ." RCW 49.60.210(1). To prove her claim of retaliation, plaintiff must show that (a) she was engaged in statutorily protected activity, (b) there was an adverse employment action, and (c) retaliation was a

---

after the CAM had issued. Dkt. # 22 at 44.

[5] Counsel makes the circular and unsupported argument that "[r]equiring a disabled employee with mental health limitations to make multiple calls to report an already documented and granted leave, proved to be discriminatory in this case." Dkt. # 21 at 22. Plaintiff had, in the past, complied with Boeing's procedures and does not state in her declaration that they were too much for her during the relevant time period. An employee's failure to comply with a procedure does not ipso facto prove that the procedure is unreasonable.

[6] If plaintiff were to proceed under the burden-shifting analysis set forth in McDonnell Douglas, her claim would also fail. A prima facie case of disparate treatment is not established simply because plaintiff is a member of a protected group and suffered an adverse employment action. Rather, the presumption of discriminatory intent arises only if plaintiff provides evidence that she was treated less favorably than a similarly-situated nondisabled employee. Plaintiff offers no comparator evidence in this case. She makes no attempt to show that a similarly-situated nonprotected employee was treated more favorably with regards to any of the CAMs she received or in the circumstances leading to her discharge.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -10-

substantial factor motivating the adverse action. Kahn v. Salerno, 90 Wn. App. 110, 128-29 (1998). Once a prima facie case of retaliation is presented, the burden shifts to defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 618 (2002). Plaintiff bears the ultimate burden of persuasion, however, and must raise an inference of retaliation to withstand a motion for summary judgment.

Plaintiff cannot make a prima facie showing of retaliation. There is no evidence from which a reasonable jury could conclude that plaintiff's protected leave – *i.e.*, the absences for which she had established a link to her workplace injury or depression – or her period of light duty assignment caused or were in any way related to her termination. Although plaintiff argues that she did not deserve most of the CAMs she received, none of them was based on protected activity. The only evidence of a causal link is that she was terminated after she took medical leave in 2012 and requested a light duty assignment through March 2013. More than six months elapsed between plaintiff's return to regular duty and HR's termination review, however. No inference of discrimination arises in these circumstances. Even if the timing were more favorable to plaintiff and gave rise to an inference of causation, plaintiff's employment records – including multiple policy violations that triggered every step of Boeing's progressive discipline process – establish a legitimate, non-retaliatory reason for her termination.  Thus, plaintiff has failed to offer any evidence from which a reasonable jury could infer that her protected activity was a substantial factor motivating the decision to terminate her employment.

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendant.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -11-

1 | Dated this 27th day of October, 2016.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -12-